is the first case before us today, which is USA v. Scott Sanders. Good afternoon. May it please the court. David Harris on behalf of Appellant Scott Sanders. Your Honors, this case involves a multi-million dollar forfeiture error that the government admits for the first time on appeal. But Your Honors, this case does not just involve one error. There were errors at each step of the forfeiture proceedings in this case, each involving millions of dollars the government is not entitled to. This appeal at its heart seeks to vacate a forfeiture order dated October 22, 2019, signed by the District Court Judge Judge Kaplan, which condemned to foreclosure six substitute untainted assets owned by the Appellant Mr. Sanders, all of which the government, in its motion to foreclose, failed to provide any appraisal of said assets, and no estimated values were provided at the time the government sought forfeiture of these assets. The Appellant seeks to vacate the October 22, 2019 forfeiture order for several reasons. The first reason is because said order violates 21 U.S.C. Section 853P, because the seizure order may not exceed the remaining amount owed under a money judgment where in this court the order clearly does. We can show to this court that Judge Kaplan issued an illegal order by looking at the undisputed numbers in this case. One, a money judgment was entered for forfeiture in an amount of $4,878,592.30. Two, Mr. Sanders paid on that $3,099,000 toward forfeiture debts owed. And three, the government and the Appellant paid $3,779,030.61 remaining on the money judgment if there is no reversal on appeal. When examining the assets identified in the District Court's October 22, 2019 forfeiture of the six properties Judge Kaplan condemned to forfeiture, just one of the properties named Woodward property was sold by the Appellant to a third party prior to the order of forfeiture in an amount of $3.3 million. By allowing the government to seize this one property alone would give the government a windfall of $1.5 million in excess of the full forfeiture amount owed. This would equally be so if the court would amend to allow the proceeds derived from the same sale of the Woodward property. Further, the order allows for the forfeiture of five other untainted assets, which are properties to be seized as well, when seizure of the Woodward property alone would exceed the limits of forfeiture allowed under 21 U.S.C. Section 853P. In addition to trying to keep over a million dollars in untainted assets that exceed the value of the amount of the money judgment, the government also failed to show its entitlement to any of the substitute assets in the first place. It has an affirmative duty pursuant to Section 853T1 to show that tainted assets became unavailable as a result of an act or omission of the defendant, Scott Sanders. Excuse me, your initial three minutes have expired. Okay. This is your big chance, Mr. Harris. Yes, sir. Keep going. Okay. The government has an affirmative duty under 853 to show that the tainted assets became unavailable as a result of an act or omission. The government filed a boilerplate declaration that failed to meet this standard. It never showed or alleged that Sanders had any tainted assets or that any were, in fact, hidden or absconded by him, which would allow the government to then seek a seizure of substitute untainted assets at that point. You have no allegation of this, and for that reason, the government should not be allowed to seek or allow the judge to sign an order condemning these same assets that were untainted and belonged to Mr. Sanders. This action is still being pursued by Mr. Sanders in another courtroom in which Mr. Sanders has told the government that his ex-wife, it was believed, was in possession of tainted assets, which could be collected against the forfeiture, and were obtained by Mr. Sanders' ex-wife while he was incarcerated. The government, however, has refused to pursue said tainted assets, and Judge Kaplan has not allowed Mr. Sanders to impugn his ex-wife into the case for the government to pursue said assets. So what you have is you have the government instead now pursuing untainted assets and refusing to pursue assets identified by Mr. Sanders and provided to the court that should be collected upon and put forth against the balance owed on the forfeiture money judgment. Counsel, this is Judge Pooler. Hasn't the government agreed to a remand here? They have, Your Honor. Unfortunately, though, there still remains a disagreement on appeal. Mr. Sanders and myself take the position that these untainted assets should not be allowed to be forfeited. The government is simply saying, okay, we'll forfeit to the amount that's owed, and if there's any additional money that needs to be returned, we'll take that up. It's my position today and in my moving papers that Mr. Sanders should not have to relinquish untainted assets under the facts in this case. The government has failed to prove its entitlement or demonstrated that any forfeitable assets have been removed or blocked by Mr. Sanders from being recovered. Counsel, is Mr. Sanders prepared to pay the amount owing from the sale of the property right now? I'm sorry, could you repeat that? Yes. Is Mr. Sanders prepared to pay the amount owing on the forfeiture from the proceeds of the sale now? Is he prepared to do that? Well, that question first assumes that these untainted assets need to be paid, to be used to be paid. You don't agree that these assets were properly subject to the forfeiture? These assets are not properly subject to the forfeiture. Therefore, they shouldn't be sold and used and applied for the balance owed. If, in fact, the court decides that the assets were properly forfeited and that the seizure and order of Judge Kaplan is affirmed, then it would be logical that the proceeds could be used to pay off the balance. Yes. Mr. Harris, this is Judge Cabreras. Just to make sure that I understand the record here, in the order that was dated July 30, 2020, and entered by a panel of our court, we stated, and I quote, the appeal is limited to the orders designated in the parent's notices of appeal, quote, unquote. Now, let me just see whether I have this straight. The orders from Judge Kaplan that you designated in the notices of appeal, as far as I can tell, let me just enumerate them and then ask you whether I've accurately recorded this. First of all, there's a September 3, 2019 order denying Sanders' leave to file a third party complaint under Rule 14. Secondly, on the same date, there's an order denying Sanders' request for a stay of criminal forfeiture proceedings. And finally, there's a third September 3 order requesting that the government file a reply to your opposition to the government's motion for a preliminary order of forfeiture as to substitute assets. Then, there's another order on October 24, 2019, which is styled, Corrected Preliminary Order of Forfeiture as to Substitute Assets. As far as I know, these are the four orders on appeal. Is that right? That's correct, yeah. All right, this is helpful. If you'd like, I can address all the orders to help you understand them in context. No, I think this is fine. I just wanted to make sure that was it. And so, what's the basis for our appellate jurisdiction over your appeal of these orders, and specifically the September 3, 2019 order requesting the government file a reply? So, Larry, you have a situation where the government was asking for untested assets to satisfy a $1.7 million balance owed on the money judgment. At that point, you have Mr. Sanders and undersigned counsel at the district court informing the court and the government that the outstanding balance owed on the money judgment and for forfeiture could be paid because Mr. Sanders' ex-wife, while Mr. Sanders was incarcerated, committed illegal acts and diverted tainted assets which could be seized by the government and applied and paid against the money judgment and to pay off the forfeiture. That is the order where Judge Kaplan denied bringing in the ex-wife in a civil complaint that was drafted to demonstrate to the court the assets, the illegal conduct, the illegal taking of the assets, and the fact that they, Mr. Sanders believed they were tainted and could be applied in this case. The government... This is Judge Bianco. I thought on page 11 of your reply brief, you said you're not appealing the decision by Judge Kaplan to deny you leave to bring in the third party. Actually, that's true, but it's relevant in the analysis here today. Hold on. I understand what you're saying. Let me just see if I can see where the difference is between you and the government. Obviously, the government, as Judge Poole pointed out, the government's consenting to a remand so that there'll be a provision that says any excess value from the forfeiture should be returned to your client. So there's agreement that that needs to be corrected. The thing I think you're suggesting to us that you also think you should get to be heard on on the remand is whether the government has proven by a preponderance of the evidence that the unavailability of the tainted assets were the result of your client as opposed to the ex-wife stealing them. So you want there to be... I don't know, a hearing? You want to be able to have the government prove that to the district court, which you said they did not do. Is that... Am I getting it right? I think you described that very well, but what I'm saying is, of course, beyond just that, what I'm saying is that what you just described should have happened. There should have been an evidentiary hearing and findings made by the judge, whether or not we're correct, whether these other assets are... The order does have a finding on that. And I don't know whether you want to talk about evidentiary or not, but there isn't a line in the order that says that that was proven. You're just saying that he did not address this allegation regarding the ex-wife. No, what I'm saying is you have to take that into context one step further. You have to say, okay, there were alleged tainted assets. The court and Judge Kaplan denied that. In addition, the government has failed to allege anything done by Mr. Sanders with respect to tainted assets, which under 853P would open the door for the government to now seek untainted assets to be applied and seized and sold to pay off this. So I'm explaining that in the context of how we got to this now. It's entirely relevant to point out that there are tainted assets that exist, we believe. The court refuses to acknowledge it. The government is refusing to even look at it. They're saying, no, you know what? We're just going to take these untainted assets that belong to Mr. Sanders and sell them without any entitlement proven to the judge. There was no demonstration that Mr. Sanders acted in any conduct to prevent any tainted assets from being acquired. They simply went to Judge Kaplan and said, you know what? We want to take these untainted assets. I don't understand. Judge Kaplan already made this determination with respect to the coins in the prior order. So there was already been a determination that your client is responsible for the dissipation of the tainted assets. So this goes back to Judge Cabrones. You're trying to revisit things that already happened in the case. I don't really understand your analysis about the coins. There were coins that were identified. In order for the coins to be taken, there would have been a finding by the district court that your client was responsible for the dissipation of the tainted assets, right? Otherwise, you can't go after the coins, right? There's never been any findings of any tainted assets being dissipated by Mr. Sanders. There's never been any filings by the government that says, Mr. Sanders absconded or dissipated this particular asset. And for that reason, we're going to now go after many millions of dollars that exceeds the balance owed on the forfeiture money order and allow the government now to seize three, four plus million dollars in assets when there's a balance of much less than that. And there's not even a justification to attach those assets in the first place. The coins are $100,000, which were in a divorce court being held by the judge and a trustee in that case. And Judge Kaplan decided that those coins should be applied as well to forfeiture. That doesn't in any way, though, suggest that these assets that are now being seized as untainted assets have any relation to the findings of those coins or that Mr. Sanders did anything else to allow the government to come in and take these assets. So I'm trying to clarify that for you to at least understand the history and the fact in my argument that the government has failed to allege anything to entitle it to the seizure of untainted assets under 853P. Okay, Mr. Harris, you reserved a minute. But let's hear from Mr. Podolsky, find out what he thinks of your argument. Thank you. May it please the court. My name is Matthew Podolsky, and I represent the United States. As I think the panel has pointed out, there really is only one issue in this appeal. And really, it's not even contested. It's whether to vacate the 2019 substitute assets order. As the government has made clear in its briefing, we consent to a remand to clarify the order to ensure that the government will not be using any assets in excess of the outstanding portion of the money judgment or will provide any excess value back to the defendant. As the panel has pointed out, the remaining issues raised by the appellant in his briefing have either been resolved by the prior order on the motion panel or have been abandoned by the appellant. I do want to follow up just on the last colloquy between counsel for the appellant and Judge of the Tainted Assets. And I would just refer the panel to the appendix at 557 to 558. That is the declaration of John Calabria, which supported the first substitute assets motion for the coins. And in substance, stated that the money that Sanders previously had agreed to render to the government for forfeiture was no longer available and could not be found by the government upon due diligence. That was the basis for the finding of the court in the 2018 substitute assets order, which is not subject to this appeal. So I just wanted to clarify the record with respect to that finding. I'm given that the government has consented to to vacate and remand at the 2019 substitute assets order. I'm certainly happy to answer any questions that the panel has. Otherwise, we would rest on our briefing. All right, Judge Poole, any questions? I have no questions for the government. Thank you, Judge Bianco. Yeah, I just have one question. I understand your point. And on page 61 of the special appendix, Judge Kaplan does find as a result of the acts and omissions of the defendant, the government, despite its exercise of due diligence, has been able to locate or obtain the additional proceeds of the offense of the defendant's conviction. So there's a finding on that. But his sub point to that is that there was really no ability for him to litigate the the ex-wife's allegedly stealing the tainted funds. What's your response to that? Is there an issue that that wasn't addressed? No, Your Honor. First of all, he certainly could have raised that claim or issue with respect to the 2018 substitute assets motion first. And second, he did raise it to the court again. And with respect to the 2019 substitute assets motion, it was simply rejected by Judge Kaplan. And he was certainly well within his discretion to do so. Judge Kaplan, in connection with the 2018 substitute assets motion, which was referenced in the 29th, the second or subsequent substitute assets motion, he had the affidavit of of non-collabria. He was certainly not required to accept the allegations, frankly, outlandish allegations that were contained in a purported third-party complaint that the defendant attempted to file during his substitute assets forfeiture proceedings. Particularly so given the history of this case and the history with this particular defendant, including not only the underlying crime, but what Judge Kaplan observed was perjury during his habeas proceeding. So I think Judge Kaplan was well within his discretion not to credit these allegations contained in the third-party complaints. And I'm happy to talk about them with more specificity if that would be helpful. No, that's sufficient. Thank you. I have no other questions. Well, thank you. Thank you, Your Honor. And if there's nothing further, we will rest on our briefing. All right. Thank you very much. I would like to have one minute. Thank you, Your Honors. Your Honors, I want to clear up some confusion in this case. First of all, the points in question in the divorce case were untainted assets. They're not really relevant to the analysis here. I want to suggest to you when you say that Judge Kaplan did make a finding that Mr. Sanders dissipated assets, I want you to look closely at his findings. Because there are no identified tainted assets that Judge Kaplan identified, which he has demonstrated through an order that Mr. Sanders dissipated and gives now rise for the government to now come in and get untainted assets. The other point I want to clear up for the court, and I think it's very important, Judge Kaplan rejected a third-party complaint. That's all he did. The way it worked was that the easiest way to propose this was through a third-party complaint. Basically, impleting his ex-wife into the case because she held the tainted assets, and that was what was at issue in the court. The court rejected the idea that you can do a third-party civil complaint and bring it into the criminal proceeding. That's what he did. He never took any examination or afforded us any opportunity to say, you know what? Within the third-party complaint, let me take a look at the alleged tainted assets. Let's have an evidentiary hearing and let me decide for myself whether or not the assets alleged in the third-party draft complaint that was rejected have merit and give both sides an opportunity to argue it and let the court decide whether or not those tainted assets are more appropriate for seizure under the forfeiture. Instead of allowing the government under a boilplate, I find Mr. Sanders dissipated assets without saying what he did or what assets he dissipated and allow them to now seek substitute untainted assets without a fair review of the tainted assets Mr. Sanders alleged. Thank you, Your Honor. I conclude. Thank you very much, Mr. Harris. We'll reserve decision in 19-3158, USA v. Sanders, and we'll